# IN THE MATTER OF ESTEBAN RIVERA.

## CLAIMS OF MONSABERT AND ALONZO.

San Juan, Bankruptcy, No. 155.

### PRIORITIES IN BANKRUPTCY.

Bankruptcy—Priorities.

1. The debts entitled to priority under the Bankruptcy Act for the

IX. Porto Rico.—10.

In the Matter of Rivera.

reason that they are entitled to priority under the state law are in
Porto Rico those classified in §§ 1822–1830 of the Civil Code.

Bankruptcy—Priorities—Chattel Mortgage.
2. There can be no chattel mortgage in Porto Rico, and the holder
of such mortgage is not entitled to a priority in bankruptcy.

Bankruptcy—Priorities.
3. The provision of § 1825 (4) of the Civil Code that indebtedness
which appears in a public instrument shall be preferred is of no effect
in bankruptcy, and does not give rise to a priority.

Bankruptcy—Priorities.
4. The preference granted by § 1823 (1) to the vendor of personal
property in the possession of the bankrupt does give rise to a priority
enforceable in bankruptcy.

Bankruptcy—Priorities—Local Law.
5. The priorities provided for by §§ 1823–1825 of the Civil Code
give rise to preferences in bankruptcy proceedings, except where the
Bankruptcy Act itself declares that any of the credits of that classi-
fication shall have a higher or lower place in bankruptcy distribution
or where such credits are abolished by the Bankruptcy Act.

Bankruptcy—Priorities—Pleadings.
6. Strict pleadings are not requisite in bankruptcy proceedings,
and the court will mold its decree so as to do justice between the
parties.

Opinion filed August 8, 1916.

—————

*Mr. H. G. Molina* and *Pedro C. Timothee* for Monsabert.

*Mr. F. del Valle, Jr.,* for *Alonzo.*

*Messrs. Scoville & Kelley* for B. A. Cheney, Trustee.

HAMILTON, Judge, delivered the following opinion:

The facts as certified by the referee seem to show that peti-

In the Matter of Rivera.

tioner Monsabert owned a certain house at the back of a lot of which they were the lessees, and on February 22, 1914, they borrowed from petitioner Alonzo $728, afterwards reduced to $628.20, evidenced by a mortgage upon the house alone. On December 19th of the same year Monsabert sold the property to Rodriguez for $2,300, of which $500 was in cash and the rest to be paid in monthly instalments. The deed of sale gave the vendors a mortgage to secure the price, and the same deed recited the prior mortgage to Alonzo, and gave the purchaser the right to pay Alonzo his debt and deduct the amount from the Monsabert purchase money. Rodriguez seems to have been a figure head, and the actual payments and transactions were on behalf of Esteban Rivera, to whom Rodriguez made a deed September 6, 1915, after the property was levied on in attachment by a creditor of Rivera, and Rivera left in charge as custodian. On the following day Rivera filed his petition in voluntary bankruptcy.

The questions arising relate to the relative priorities of Monsabert, Alonzo, and the bankrupt's trustee.

1. The case is governed by the Bankruptcy Act, § 64-b-(5), which provides that "the debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be . . . (5) debts owing to any person who by the laws of the states or the United States is entitled to priority." [30 Stat. at L. 563, chap. 541, Comp. Stat. 1913, § 9648.] No question arises as to the four preceding classes, and so they need not be considered.

In Re Pilar Hermanos, 8 Porto Rico Fed. Rep. 605, this court had occasion to go fully into the question of the "preferences" allowed by the civil law as compared with the "lien" al-

### In the Matter of Rivera.

lowed at common law and in bankruptcy. Preferences in the sense of the Bankruptcy Act are disapproved and generally voidable, but the word "preferencia" is used at the civil law with an entirely different meaning. In the case mentioned it was held that the civil-law preference is practically equivalent to the common-law lien, and is to be sustained as such. The case at bar comes up under the heading: "Classification of credits" as declared in the Civil Code of Porto Rico, §§ 1822–1826, and also under the head of "Priority of payment of credits," in §§ 1827–1830. These sections have frequently been before this court in recceivership matters, and several provisions have been applied by this court. It is to be remembered, however, that a receivership is a very different thing from bankruptcy and is governed by other principles. A receivership looks to the continued life of the corporation or business in question. The bankruptcy Act, however, looks to the closing up of the business and any rebeginning to be with the past wiped out entirely. The principles applying in the one case may throw light upon those applying in the other case, but they are entirely distinct. Decisions, therefore, in receivership cases are not precedents in the case at bar.

2. The parties in the case at bar attempted to secure both debts by mortgages. The sale by Monsabert says that the unpaid money shall be secured by a mortgage, and the loan to Monsabert by Alonzo was expressly secured by·a mortgage. There can, however, be no chattel mortgage under the Porto Rican law, and the question must be decided upon other principles. Re Porto Rico Progress Pub. Co. 8 Porto Rico Fed. Rep. 264.

3. A claim is set up that the transaction is governed by the Civil Code, § 1825-(4), that is to say: "With regard to all

In the Matter of Rivera.

other personal and real property of the debtor, preference shall be given to: . . . (4) Indebtedness which without a special privilege appear: (a) In a public instrument." The court cannot concur in this argument. It has already determined in Re Ramirez-Quiñones [147 C. C. A. 499, 233 Fed. 733] that this section is inapplicable to a mere debt, one which could be evidenced by a note, because that comes more properly under the Code of Commerce, and the Code of Commerce is inoperative in bankruptcy matters.

Such provisions go back to the time when the office of notary was de facto the record office for deeds. In Spanish times there were few notaries, and the office was one of great importance. Now any lawyer may be a notary, and with the enactment of the Mortgage Law of 1893, the reason for the provision of the Civil Code has lessened, if not actually ceased. Notice to third parties is now obtained by recording an instrument in the registry of property. Such being the doubtful application of this provision in general, the court will not consider it as being effective where third persons are affected under the National Bankruptcy Act. In such cases this provision is to be considered as suspended.

4. Civil Code, §§ 1822 and 1823 read as follows:

"Sec. 1882. Credits shall be classified for their graduation and payment in the order and manner specified in this chapter."

"Sec. 1823. With regard to specified personal property of the debtor, the following are preferred:

1. Credits for the construction, repair, preservation, or for the amount of the sale of personal property which may be in the possession of the debtor to the extent of the value of the same. . . . "

. In the Matter of Rivera.

In the case at bar Monsabert owned the house, and the only way it comes to the bankrupt and his trustee at all is by a transaction in the nature of a conditional sale, where the bankrupt and his trustee never would have obtained the property except by a payment of the purchase price. The bankrupt was in possession under this agreement. His claim cannot be worked out under the theory of a vendor's lien, even if this court is to be considered as sitting as a court of equity for that purpose. A court of equity does not recognize a vendor's lien on personal property. The rule applies only to real property. But there does not appear any reason why § 1823-(1) does not apply under the bankruptcy system, and, on the contrary, it would appear very inequitable in this case for it not to apply. Its application would not at all interfere with the theory of the Bankruptcy Act, which is a conversion of the bankrupt's property into money for distribution among his creditors. The case does not seem, therefore, to be within the reasoning of the circuit court appeals in the Ramirez- Quiñones Case of May 23, 1916 [147 C. C. A. 499, 233 Fed. 733] and the priority of the Monsabert claim will be recognized, subject to whatever may be the equities of Alonzo.

5. In the Pilar Hermanos Case, the court had occasion to discuss the subject of local liens as recognized by the Bankruptcy Act. The case at bar brings up the question of debts entitled to priority under local laws as recognized in the Bankruptcy Act, § 64-b-(5). The Esperanza Case, 5 Porto Rico Fed. Rep. 1 to 6, expresses doubt as to the system of classification of credits of the Porto Rico Civil Code, and the Quiñones Case in the circuit court of appeals indicates that that court is not prepared to consider all its provisions as conforming to the

scheme of distribution of the Bankruptcy Act. This is no doubt true. Light, however, may be thrown upon the question by the fact that at civil law debts are themselves classified and directed to be paid in a certain order. This preferencia is not a lien, but is a priority. It has its analogy in common-law states, as where state laws uniformly declare a certain order of payment of debts of a decedent. First come funeral expenses, the expenses connected with the death, last illness, and so on down. This statutory priority can hardly arise in the bankruptcy court because bankruptcy has to do with living men, and not with the estates of dead men. But in Porto Rico as in Spain the law itself fixes a certain order of payment of debts, and this priority is inherent in the debt itself at the time it is contracted. It becomes, so to speak, a part of the contract. It only differs from a lien in that it is general, applying to all property, while a lien is special and applies to individual pieces of that property. Except where the Bankruptcy Act declares that any of the credits of this classification shall enjoy a higher or lower place in bankruptcy distribution, or except where particular credits of this classification are abolished directly or indirectly by the Bankruptcy Act, it is not perceived that the Bankruptcy Act does, or perhaps constitutionally can, change the order fixed by the local law. Whether the Bankruptcy Act can change a contract lien back of four months before the bankruptcy, however, need not be decided. The civil law of preferencia which is classified in §§ 1823–1825 is to be construed, with the exceptions above indicated, as being within the scope of this provision as to local priorities enforceable under the Bankruptcy Act. Escriche Dic. Raz. S. V. Preferencia, Howe Studies in Civil Law, p. —. Re Pilar Hermanos, 8 Porto Rico Fed. Rep. 605.

### In the Matter of Rivera.

The only theory upon which a contrary decision could be arrived at would be that the classification under the Porto Rico Code must be considered as hanging together as a whole, and if a part is left out the whole falls. It is not at all obvious that this principle applies to this classification. The nullification of § 1825-(4)-(a), above discussed, removes almost the lowest link in the chain, and does not have any effect upon the upper links. No other items of the classification are before the court at this time except the very first one, and so any discussion would be *obiter*.

6. Alonzo had loaned money to Monsabert upon this same property, and, although the security given is invalid as a chattel mortgage, it is a valid agreement as between Monsabert and Alonzo. Monsabert contracted with Rodriguez that Rodriguez could pay off the Monsabert claim and deduct the money from the purchase price coming to Monsabert. The bankrupt Rivera stands in the shoes of Rodriguez and is bound by this contract. It would seem, therefore, that although Alonzo mistook his remedy in asking that his claim be fixed as a lien upon the property itself or its proceeds in case of sale, he would be entitled to be subrogated *pro tanto* to the claim of Monsabert and to receive out of the money otherwise going to Monsabert the amount which he had loaned to Monsabert. The pleadings are perhaps defective in this regard, but strict pleadings are not requisite in bankruptcy proceedings, and the decree therefore will recognize this claim of Alonzo.

A decree will therefore be entered confirming the order of the referee in regard to Monsabert and modifying his order as to Alonzo to the extent above indicated.